**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
In re:                                                                     Chapter 13

FRANK J. DICICCO,
                                                                                   Case No. 22-42468 (JMM)
                Debtor.
-----------------------------------------------------------x

FRANK J. DICICCO,

                Plaintiff,

            v.                                                        Adv. Pro. No. 23-01079 (JMM)

EMIGRANT BANK, JOSEPH LEGGIO, JOHN
DOES and JANE DOES

                Defendants.
-------------------------------------------------------------x

## MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR JUDGMENT ON THE PLEADINGS

Defendant, Emigrant Bank ("Emigrant"), by and through its undersigned counsel, Borchert & LaSpina P.C., submits this *Motion to Dismiss or, in the Alternative, for Judgment on the Pleadings* (the "Motion") pursuant to Rules 12(b)(1) and (c) of the Federal Rules of Civil Procedure (the "Rules"), as made applicable to this Adversary Proceeding by Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), which was commenced by Plaintiff, Frank J. DiCicco, the Debtor in the above-referenced bankruptcy case.

This Motion is made and based upon the following Memorandum of Points and Authorities, the Declaration of Jason Sackoor, Esq. ("Sackoor Decl."), the papers and pleadings on file, judicial notice of which is respectfully requested pursuant to Federal Rule of Evidence 201, and such further evidence and argument that may be presented and considered by this Court at any hearing on the Motion.

## MEMORADUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

This Adversary Proceeding and the Debtor's bankruptcy case generally are last ditch, bad faith attempts by the Debtor to relitigate a matter that was long ago disposed of in state court. This Court, therefore, lacks subject matter jurisdiction to grant the Debtor another bite at the apple. The Adversary Proceeding must therefore be dismissed.

The Debtor was a defendant in a New York state court foreclosure action. He was represented by counsel in that case. Following entry of a judgment of foreclosure and sale in 2018, the Debtor unsuccessfully: moved to vacate the judgment of foreclosure and sale; appealed the denial of vacatur; and moved to reargue his motion to vacate.

In his various state court filings, the Debtor asserted that Emigrant employed "sewer service" of its foreclosure complaint and submitted false delinquency notices as a part of a multiyear scheme to defraud the Debtor. Having failed in state court, the Debtor now seeks *de facto* vacatur of the foreclosure judgment on the basis that this Court, as well as the New York State Supreme Court, are criminal enterprises within the meaning of the Racketeer Influenced and Corrupt Organizations Act ("RICO").

Despite the Debtor's current machinations, it is well-settled under the *Rooker-Feldman* doctrine that federal courts "lack jurisdiction over suits that are, in substance, appeals from state-court judgments." *Hoblock v. Albany Cty. Bd. of Elecs.*, 422 F. 3d 77, 84 (2d Cir. 2005). Here, *Rooker-Feldman* applies as: (1) the Debtor is a state court loser; (2) the Debtor complains of injuries resulting from the foreclosure judgment; (3) the Debtor asks this Court to reject that judgment; and (4) the state court rendered its judgment some five years prior to commencement

of this Adversary Proceeding. *Id*. at 85. The Adversary Proceeding must therefore be dismissed for lack of subject matter jurisdiction.

Even if the Court did have jurisdiction, Emigrant is entitled to judgment on the pleadings under Rule 12(c) as made applicable by Bankruptcy Rule 7012. A motion for judgment on the pleadings is reviewed under the same standards as those employed on a motion to dismiss for failure to state a claim under Rule 12(b)(6). *King v. American Airlines, Inc.*, 284 F.3d 352, 356 (2d Cir. 2002). Here, the Debtor fails to state a claim upon which relief can be granted. First, the Debtor fails to adequately plead the elements of mail and wire fraud. As a result, the Debtor fails to allege sufficient facts to establish a pattern of racketeering activity. Second, the Debtor fails to establish that Emigrant acquired an interest or control over or was employed by or associated with an enterprise, let alone an enterprise engaged in interstate or foreign commerce. Because the Debtor fails to adequately plead all required elements of RICO violations under 18 U.S.C. § 1962, and because his claim for recoupment is dependent on his RICO claims, Emigrant is entitled to judgment on the pleadings dismissing this Adversary Proceeding in its entirety.

## II. **JURISDICTION, VENUE AND PREDICATES FOR RELIEF**

1. This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157(a) and (b)(1), and 1334(b) of title 28 of the United States Code, and the Amended Standing Order of Reference of the United States District Court for the Eastern District of New York. Consideration of this Motion is a core proceeding under 28 U.S.C. § 157(b)(2)(B) and (O) of title 28 of the United States Code. Both the Debtor and Emigrant have consented to the Court's entry of final orders and judgments in this Adversary Proceeding.

2. The predicates for the relief requested by this Motion are Rules 8(a), 9(b), 12(b)(1) and (c) as made applicable to this Adversary Proceeding by Bankruptcy Rules 7008, 7009 and 7012 respectively.

### III. BACKGROUND

**A. Procedural Background**

3. On October 5, 2022 (the "Petition Date"), the Debtor filed a voluntary petition (the "Petition") for relief under chapter 11 of title 11 of the United States Code. 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code").[1]

4. On Schedule D to the Petition, the Debtor listed a disputed, secured claim owed to Defendant in the amount of $530,457.10 (the "Scheduled Emigrant Claim".) (ECF No. 1, 17.)

5. The Scheduled Emigrant Claim relates to the premises located at 134-37 58th Road, Flushing, New York 11355 (the "Premises"). (*Id*.)

6. On motion of the Debtor, the Court converted his chapter 11 case to a case under chapter 13 of the Bankruptcy Code on March 28, 2023. (ECF Nos. 23 and 30.)

7. Prior to conversion, Emigrant timely filed a proof of claim in the amount of $849,166.81 (the "Emigrant Claim"). (Claims Reg. No. 5.1).

8. On May 14, 2024, Emigrant filed its *Application in Support of Order Terminating Stay* to permit Emigrant to complete its foreclosure and sale of the Premises. (ECF No. 63.)

9. The chapter 13 case remains open; however, the chapter 13 trustee's motion to dismiss is pending before the Court. (ECF No. 40.)

---

[1] For purpose of this Motion, Defendant acknowledges that the Court must accept that allegations made in the Debtor's complaint are true. However, with respect to Defendant's request for relief under Rule 12(b)(1), the Court "may refer to evidence outside the pleadings to resolve disputed issues of jurisdiction." *Hourani v. Wells Fargo Bank, N.A.*, 158 F. Supp. 3d 142, 146 (E.D.N.Y. 2016) (citing *Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986)

4

10. On August 18, 2024, the Court entered its *Order Granting Conditional Relief from the Automatic Stay* (the "Stay Order") which provides in pertinent part that the Debtor shall: (1) pay to Defendant the sum of $15,087.12, representing unpaid post-petition real estate taxes, by September 1, 2024; (2) pay the Defendant monthly payments of $3,088.47 commencing on September 1, 2024 and continuing thereafter; and (3) provide proof that Debtor maintains property insurance for the Premises with the Defendant named as a co-insurance. (ECF No. 70.) In the event the Debtor defaults under the Stay Order and fails to cure such default, the Defendant will be entitled to stay relief in order to complete a foreclosure sale of the Premises.

**B.     The State Court Foreclosure Action**

11. On January 12, 2015, Emigrant, as successor-by-merger with Emigrant Savings Bank, commenced a state court action (the "State Court Action") seeking to foreclose its note and mortgage against the Premises in the New York Supreme Court for the County of Queens (the "State Court"). *Emigrant Bank v. Frank DiCicco, et al.*, Index No. 700265/2015 (Sup. Ct. Queens Cnty.) (Sackoor Decl., Exhibit A (State Court Complaint).)

12. On May 15, 2017, the State Court entered an Order of Reference on default. (Sackoor Decl., Exhibit B (Order of Reference).)

13. On January 30, 2018, the Debtor filed its opposition to Emigrant's motion for entry of judgment and foreclosure and sale which was supported by, among other things, the *Affidavit of Frank DiCicco* (Sackoor Decl., Exhibit C (First DiCicco Aff.).)

14. In his First DiCicco Aff., the Debtor argued that service of process on himself and his co-defendant mother was defective. (First DiCicco Aff. at ¶¶ 3-9.)

15. On November 15, 2018, the State Court entered a Judgment of Foreclosure & Sale which was subsequently amended on December 11, 2018 (Sackoor Decl., Exhibit D (Foreclosure Judgment).)

16. On January 9, 2019, the Debtor moved to dismiss the State Court Action. (Sackoor Decl., Exhibit E (Second DiCicco Aff.).) Again, the Debtor alleged insufficient service of process. Additionally, the Debtor stated:

> This application should be granted because myself and my family are victims of unspeakable criminal conduct, as well as fraud and gross negligence. Myself and my mother, the defendant Rosalie Dicicco, were never properly served with process in this action as will be explained further below. My sister, Roseann Dicicco, was not named as a defendant in this action even though she is a necessary party since she has an ownership interest in the subject property. The bank is trying to foreclose on my family home pursuant to a mortgage that was ruled to be predatory in a prior foreclosure action, and although the predatory mortgage was modified pursuant to a subsequent settlement agreement, the settlement agreement was never recorded. The bank improperly held us in default of the mortgage and railroaded us into this foreclosure action…
>
> Even if the Court declines to dismiss the case, we should still be permitted to defend ourselves on the merits. The plaintiff has unclean hands. The plaintiff sent numerous delinquency notices even though the Mortgage was paid up and then had its agents fraudulently inform us that our payments would no longer be accepted. Much of the suffering we have undergone was precipitated by the plaintiff's misconduct.

(Second DiCicco Aff., ¶¶ 3 and 34(4).)

17. On March 6, 2019, the State Court denied the Debtor's motion to dismiss. (Sackoor Decl., Exhibit F (Order Denying Dismissal).)

18. On March 25, 2019, the Debtor appealed the Order Denying Dismissal. (Sackoor Decl., Exhibit G (Notice of Appeal).) Debtor failed to perfect the appeal or request an extension

by which to perfect the appeal, and therefore, the appeal is deemed dismissed in accordance with the rules of the Appellate Division, Second Department. *See* 22 N.Y.C.R.R. §1250.10.

19. On May 1, 2019, the Debtor filed a proposed order to show cause seeking a preliminary injunction staying the foreclosure sale of the Premises scheduled for May 3, 2019. (Sackoor Decl. at Exhibit H (Proposed OSC).)

20. On July 9, 2019, the State Court so-ordered a stipulation between the Debtor and Emigrant whereby the parties agreed to a stay of sale until September 3, 2019. ((Sackoor Decl., Exhibit I (Stay Order).)

21. Following the expiration of the stay, Emigrant scheduled a foreclosure sale of the Premises for November 1, 2019. (Sackoor Decl., Exhibit J (Notice of Sale).)

22. On the eve of the sale, the Debtor filed petition for relief under chapter 13 of the Bankruptcy Code. *In re DiCicco*, Case No. 19-46593-jmm. The Court dismissed the Debtor's 2019 bankruptcy case on September 8, 2020. (Sackoor Decl., Exhibit K. (Dismissal Order).)

23. On August 17, 2022, Emigrant filed a second notice of sale scheduling an auction sale of the Premises for October 6, 2022. (Sackoor Decl. , Exhibit L (Second Notice of Sale).) However, on the eve of the auction, the Debtor filed the above-captioned bankruptcy case.

C. **The Instant Adversary Proceeding**

24. The Debtor commenced this Adversary Proceeding on September 11, 2023 by filing a complaint (the "Complaint") asserting three causes of action: RICO violation under 18 U.S.C. § 1962(b) and (c) (Count I); RICO violation under 18 U.S.C. § 1962(b) and (c) (Count II); and recoupment in connection with the Emigrant Claim (Count III). (Adv. Pro. ECF No. 1.)

25. On October 18, 2023, Emigrant filed its *Answer* to the Complaint wherein it asserted various affirmative defenses including, without limitation, failure to state a claim upon

which relief can be granted and that Plaintiff's claims are barred under the *Rooker-Feldman* doctrine. Adv. Pro. ECF No. 4.)

26. As of the date of this Motion discovery remains open [Adv. Pro. ECF No. 6] and no trial date has been scheduled.

## IV. ARGUMENT

### A. The Debtor's Claims in this Court are Barred by *Rooker-Feldman*

Rule 12(b)(1) provides that the Court shall dismiss an adversary proceeding where it lacks subject matter over a plaintiff's claims. Fed. R. Civ. P. 12(b)(1) and 12(h)(3); *Tongkook Am. v. Shipton Sportswear Co.*, 14 F.3d 781, 786 (2d Cir. 1994) ("subject-matter jurisdiction cannot be waived and the issue can be raised at any time in the course of litigation.").

The *Rooker-Feldman* doctrine holds that lower federal courts lack subject matter jurisdiction to review state court judgments. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). This includes claims that are 'inextricably intertwined' with a prior state court determination." *Johnson v. Smithsonian Inst.*, 189 F.3d 180, 185 (2d Cir. 1999); *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014) (*Rooker-Feldman* bars federal courts from exercising jurisdiction over suits that "essentially amount to appeals of state court judgments."); *Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 165 (E.D.N.Y. 2010) ("Although plaintiff has labeled the relief in the complaint as seeking monetary damages, it is abundantly clear that the whole purpose of this action is to stop and undo the foreclosure judgment."), *aff'd*, 446 F. App'x 360 (2d Cir. 2011). For example, federal claims that that a state court judgment was obtained by fraud are subject to *Rooker-Feldman*. *Johnson* at 185. The doctrine applies when: (1) the federal court plaintiff lost in state court; (2) the plaintiff alleges that injury as a result of the state court judgment; (3) the plaintiff invites the federal court's

8

review and rejection of the judgment; and (4) the judgment was rendered prior to the commencement of the federal court action. *Hoblock* at 85.

Here, it cannot be reasonably disputed that the requirements for invoking *Rooker-Feldman* are satisfied: the Debtor lost in State Court by virtue of the Foreclosure Judgment and that the State Court entered that judgment prior to the commencement of this Adversary Proceeding. As to the remaining substantive requirements, these are likewise satisfied. Notwithstanding the Debtor's scattershot and often times indecipherable Complaint, the cause of Plaintiff's alleged injury is clear: the Foreclosure Judgment will result in the Debtor's loss of the Premises and its monetary value (Complaint at ¶ 63, and 64.) The Debtor's styling of his claims as RICO violations along with his attempts to argue that his alleged injuries resulted from Emigrant's actions rather than the Foreclosure Judgment are unavailing. Notably, the facts asserted in the Complaint concerning Emigrant's alleged misconduct are largely identical to those raised in the State Court Action. As to the remaining substantive requirement, the Debtor asks the Court, in effect, to revisit and reject the Foreclosure Judgment by awarding him treble damages which, presumably, would be in excess of the value of Emigrant's interest in the Premises. *Powell v. Ocwen Loan Servicing, LLC*, No. 23-421, 2024 U.S. App. LEXIS 4298, at *5 (2d Cir. Feb. 26, 2024) ("state-court losers may challenge a party's conduct in litigation that resulted in a foreclosure judgment if it does not require the federal court to 'consider[] independently . . . the merits of that foreclosure judgment.'" (quoting *Hansen v. Miller*, 52 F.4th 96, 100 (2d Cir. 2022)). Because Counts I and II of the Complaint are barred by *Rooker-Feldman*, they must be dismissed pursuant to Rule 12(b)(1) for lack of subject jurisdiction. As the Debtor's claim for recoupment is predicated on the viability of the Debtor's RICO claim, it too must be dismissed.

B.  **Emigrant is Entitled to Judgment on the Pleadings as the Debtor's RICO Claims Fail to State a Claims upon Which Relief Can Be Granted.**

Aside from jurisdictional defects, the Debtor's RICO claims fail to state a claim upon which relief can be granted. *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999) ("In deciding a Rule 12(c) motion, we apply the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party.") (citing *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994)).

In Counts I and II to the Complaint, the Debtor asserts claims for violations of the RICO Act pursuant to 18 U.S.C. § 1962(b) and (c) which provide:

> (b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.
>
> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

The term "racketeering activity" includes the acts enumerated in 18 U.S.C. 1961(1) including mail fraud and wire fraud pursuant to 18 U.S.C. §§ 1341 and 1343 respectively.

As further discussed below, as Counts I and II fail to adequately plead (1) the existence of racketeering activity, (2) that Emigrant gained an interest or control of an enterprise as required by 18 U.S.C. § 1962(b), and (3) that Emigrant was associated with or employed by an enterprise as required by 18 U.S.C. § 1962(c). Accordingly, both counts should be dismissed.

1. **Count I Fails to State Claim under 28 U.S.C. § 1962(b) and (c).**

In Count I, the Debtor alleges that (1) Emigrant engaged in mail and wire fraud to gain control of the so-called "Queens Enterprise", an enterprise affecting interstate commerce and (2)

Emigrant was associated with the Queens Enterprise and participated in the enterprise's affairs through mail and wire fraud.

In the first instance, the Debtor fails to adequately plead the elements of mail and wire fraud. Both of these claims are subject to the heightened pleading requirements under Rule 9(b). *Spence-Jones v. Rundle*, 991 F. Supp. 2d 1221, 1253 (S.D. Fla. 2013) (RICO claims predicated on allegations of mail and wire fraud must comply not only with the plausibility criteria in *Twombly* and *Iqbal*, but also with Rule 9(b). Rule 9(b) provides:

> In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

The elements of mail fraud are (1) a scheme to defraud, and (2) the mailing of matter for the purpose of executing the scheme. *Pereira v. United States*, 347 U.S. 1 (1954). A scheme to defraud requires a showing of intent. *Powers v. British Vita, P.L.C.*, 57 F.3d 176, 184 (2d Cir. 1995) (mail fraud statute requires plaintiff to adequately allege intent to defraud). Plaintiff does not allege a single fact evidencing Emigrant's intent to defraud. Instead, Plaintiff simply challenges the merits and factual allegations in Emigrant's State Court complaint. (*See, e.g,* Complaint at ¶ 42.) Although Rule 9(b) permits a plaintiff to plead intent generally, a "plaintiff must 'provide some minimal factual basis for conclusory allegations of scienter that give rise to a strong inference' of fraudulent intent." *Powers v. British Vita, P.L.C.*, 57 F.3d 176, 184 (2d Cir. 1995) (quoting *Polycast Technology Corp. v. Uniroyal, Inc.*, 728 F. Supp. 926, 935 (S.D.N.Y. 1989)); *Conn. Nat'l Bank v. Fluor Corp.*, 808 F.2d 957, 962 (2d Cir. 1987) (plaintiff must specifically plead facts giving rise to a strong inference that defendant had intent to defraud) (internal quotation marks and citations omitted). Plaintiff's primary allegation is that Emigrant incorrectly noticed a default which then allowed it to commence the State Court Action and to ultimately obtain the

Foreclosure Judgment. Even if that allegation and Plaintiff's allegations generally are accepted as true, there is no strong inference of Emigrant's intent to defraud. Plaintiff, therefore, fails to state a claim for mail fraud.

The wire fraud statute likewise requires plaintiffs to plead sufficient allegations to plausibly show an intent to deceive. *United States v. Starr*, 816 F.2d 94, 98 (2d Cir. 1987) (both mail and wire fraud require that a plaintiff prove fraudulent intent). Again, Plaintiff simply presents various factual disputes arising in the State Court Action and asks the Court to infer intent without more. Because Plaintiff fails to adequately plead mail and wire fraud, it also fails to adequately plead a pattern of racketeering activity. On this basis alone, Count I should be dismissed.

As to the balance of the elements under 18 U.S.C. § 1962(b), Plaintiff fails to adequately plead (1) that Emigrant attempted to "acquire or maintain, directly or indirectly, any interest in or control" of the Queens Enterprise, and (2) that the Queens Enterprise "engaged in, or the activities of which affect, interstate or foreign commerce." As to the former, Plaintiff merely states, "By filing false statements, Defendants acquired and maintained an interest in [sic] Queens Enterprise." (Complaint at ¶ 54.)

Such conclusory statements do not satisfy the pleading requirements set forth by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) which extended the court's prior holding in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). Under *Iqbal* and *Twombly*, courts must determine whether a claim satisfies the requirements of Rule 8(a) under a two-pronged analysis. Under the first prong, the court must identify those "allegations in the complaint that are not entitled to the assumption of truth." *Iqbal* at 680. Bare allegation and "formulaic recitation of the elements" are "conclusory and entitled to be assumed true." *Id*., (quoting *Twombley* at 554-555).

Under the second, the Court considers whether those allegations entitled to the assumption of truth "plausibly suggest an entitlement to relief." *Id*. at 680 (2009).

As to the first prong, Plaintiff simply parrots the text of 18 U.S.C. § 1962(b):

> 39. From the time of the commencement of foreclosure and unlawful debt collection action in the New York Supreme Court, Queens County, i.e. around January 12, 2015 until now (Foreclosure Action), the Queens County Supreme Court have constituted an enterprise (Queens Enterprise) within the meaning of 18 U.S.C. §§ 1961(4), 9162(b) and (c) which enterprise was engaged in and the activities of which affected interstate commerce during the relevant times.
>
> 40. Queens County Supreme Court is the trial court and a court of general jurisdiction existing under the laws of the State of New York and is distinct from the Defendant and acts of the complained of Defendant. It entertains online filings and as well as by mail which commences. and continue legal proceedings impacting interstate and foreign commerce.

(Complaint at ¶¶ 39-40.)

As the second prong, the near complete absence of allegations entitled to truth are insufficient to establish a plausible claim under 18 U.S.C. § 1962(c).

Plaintiff's claim pursuant to 18 U.S.C. § 1962(c) is also deficient. As just discussed, Plaintiff fails to adequately plead racketeering activity, and the existence of an enterprise engaged in or affecting interstate or foreign commerce. The remaining element of 18 U.S.C. § 1962(c) requires that Plaintiff adequately plead that Emigrant was associated with or employed by the Queens Enterprise. Instead, Plaintiff only offers the following bare allegations:

> 48. At all relevant times the Defendants and its team members, associated with the Enterprise knowingly conducted the Enterprise's affairs or knowingly participated, directly or indirectly, in the conduct of the enterprise's affairs.
>
> 59. Each of the Defendants, employed and or associated with the Queens Enterprise, conducted or participated in, directly or indirectly, the management or operation of state court filings

etc. with Queens Enterprise and its affairs through a "pattern of racketeering activity".

(Complaint at ¶¶ 48 and 59.) Once again, Plaintiff's allegations are mere formulaic recitations of the elements of the RICO statute and thus fail to satisfy the pleading requirements of Rule 8(a).

Because Plaintiff fails to state a claim upon which relief can be granted, Emigrant is entitled to judgment on the pleadings in connection with Count I of the Complaint.

2. **Count II of the Complaint Also Fails to State Claim under 18 U.S.C § 1962.**

The pleading defects in Count II of the Complaint – which simply substitutes the "Bankruptcy Court Enterprise" for the "Queens Enterprise – are likewise glaring.

To reiterate, 18 U.S.C. § 1962(b) and (c) provide:

> (b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.
>
> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

With respect to 18 U.S.C. § 1962(b), the Debtor presumably alleges that Emigrant engaged in mail and wire fraud and that these acts constitute "racketeering activity". As with Count I, however, the Debtor simply recasts Emigrant's prosecution of the State Court Action as a scheme to defraud. Nor does the Debtor offer any well-pleaded allegations that Emigrant acquired or maintained, whether directly or indirectly, an interest or control of the so-called "Brooklyn Court Enterprise".

14

As to 18 U.S.C. § 1962(c), the Debtor likewise fails to offer any well-pleaded, non-conclusory allegations that Emigrant is either employed or associated with the "Brooklyn Court Enterprise". Nor, as discussed above, does the Debtor adequately plead a pattern of racketing activity.

Because Count II fails to state a claim upon which relief may be granted, Emigrant is entitled to judgment on the pleadings.

## CONCLUSION

**WHEREFORE**, Emigrant respectfully requests Court enter of an Order dismissing the Complaint in its entirety and granting such different and further relief as the Court deems just and proper.

Dated: Whitestone, New York  BORCHERT & LASPINA, P.C.
September 11, 2024

By: */s/ Jason Sackoor*
Jason Sackoor
19-02 Whitestone Expressway, Suite 302
Whitestone, New York 11357
(718) 767-3333
jsackoor@blpcny.com

*Attorneys to Defendant, Emigrant Bank*