UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

In re:

Frank J Dicicco,

                    Debtor.

----------------------------------------------------------------X

Frank J Dicicco,

                    Plaintiff,

          v.

Emigrant Bank and Joseph Leggio,

                    Defendants.

----------------------------------------------------------------X

Chapter 13

Case No. 1-22-42468-jmm

Adv. Pro. No.: 1-23-01079-jmm

## MEMORANDUM DECISION GRANTING EMIGRANT
## BANK'S MOTION TO DISMISS COMPLAINT

***Appearances***:

Narissa A Joseph
Law Office of Narissa A. Joseph
305 Broadway, Suite 1001
New York, NY 10007
(212) 233-3060
njosephlaw@aol.com
*Counsel for Plaintiff*

Jackson Sackoor, Esq.
Borchert & LaSpina, P.C.
19-02 Whitestone Expressway, Suite 302
Whitestone, NY 11357
(718) 767-3333
jsackoor@blpcny.com
*Counsel for Defendant Emigrant Bank*

I.    **INTRODUCTION**

Frank J. DiCicco, the debtor-plaintiff ("Plaintiff"), asserts two claims for relief against Emigrant Bank ("Emigrant"), Joseph Leggio, and John Does and Jane Does (collectively, the "Defendants"), for damages for violations of the Racketeer Influenced and Corrupt Organizations Act (the "RICO Statute").  Plaintiff alleges Emigrant obtained a default judgment of foreclosure and sale regarding Plaintiff's home by falsely claiming Plaintiff defaulted on his mortgage and that Joseph Leggio filed an affidavit of service that falsely claimed Plaintiff had been served with the summons and complaint in the foreclosure action.  Plaintiff alleges Emigrant committed mail and wire fraud by mailing or wiring the default notices and pleadings related to the foreclosure action and by mailing or wiring a false proof of claim and other documents in connection with Plaintiff's bankruptcy case.  Plaintiff alleges Emigrant conducted its scheme through two enterprises.  In Count I, Plaintiff alleges Emigrant conducted its fraudulent scheme through the New York Supreme Court for the County of Queens (the "State Court").  In Count II, Plaintiff alleges the scheme was perpetuated through this Court.  In Count III, Plaintiff seeks disallowance of Emigrant's proof of claim or set off of Plaintiff's damages against distributions to be made on account of Emigrant's proof of claim.

Emigrant seeks dismissal of the complaint (the "Complaint") for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted.

 For the reasons set forth below, the Court grants Emigrant's motion and will dismiss Plaintiff's RICO Statute claims for failure to state a claim upon which relief may be granted.  Plaintiff's claim for disallowance of Emigrant's proof of claim or set off is dismissed as moot because Plaintiff's bankruptcy case has been dismissed.

## II.    JURISDICTION

This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b), 28

U.S.C. § 157(b)(1)–(2), and the Standing Order of Reference entered by the United States District

Court for the Eastern District of New York dated August 28, 1986, as amended by the Order dated

December 5, 2012.  Although the Court dismissed Plaintiff's bankruptcy case, the Court retained

jurisdiction to hear and determine this adversary proceeding.  Order Dismiss. Chap. 13 Case, ECF

No. 77.[1]  The Court may hear and determine the non-core claims asserted in this proceeding

because Plaintiff and Emigrant have consented to this Court's jurisdiction.  Def.'s Mot. Dismiss,

Adv. ECF No. 14, at ¶ 1.  This decision constitutes the Court's findings of fact and conclusions of

law to the extent required by Federal Rule of Bankruptcy Procedure 7052.

### III.    PROCEDURAL HISTORY

#### The Bankruptcy Case

On October 5, 2022, Plaintiff filed a voluntary petition for relief under chapter 11, Title 11

of the United States Code.  *In re Frank J Dicicco*, Case No. 1-22-42468-jmm, ECF No. 1.  On

February 9, 2023, Plaintiff filed a motion to convert his chapter 11 case to chapter 13.  Mot. Conv.,

ECF No. 23.  The Court converted the case by Order entered March 28, 2023.  Order Grant. Mot.

Conv., ECF. No. 30.

On February 28, 2023, Emigrant filed a proof of claim for $849,166.81 (the "Claim")

secured by a mortgage on 134-37 58th Road, Flushing, New York 11355 (the "Premises").  Claims

Reg. No. 5-1.

On May 14, 2024, Emigrant filed a motion requesting the Court vacate the automatic stay

pursuant to 11 U.S.C. § 362(d)(1) to enable Emigrant to foreclose its mortgage on the Premises.

---

[1] Citations to "ECF No. []" are to documents filed in Case No. 1-22-42468-jmm. Citations to "Adv. ECF No. []" are to documents filed in Adv. Pro. No.: 1-23-1079-jmm.

Mot. Stay Relief, ECF No. 63.   On August 18, 2024, the Court entered an Order granting conditional relief from the automatic stay (the "Conditional Order").   Order Grant. Cond. Stay Relief, ECF No. 70.   Under the Conditional Order, Plaintiff was required to pay post-petition real estate taxes, make monthly adequate protection payments, and obtain property insurance.  *Id.* Plaintiff defaulted on his obligations.  Aff. Non-Compliance, ECF No. 74.   On October 23, 2024, the Court entered an Order modifying the automatic stay to permit Emigrant to pursue its rights under applicable law respecting the Premises.  Order Mod. Stay, ECF No. 75.

On December 12, 2024, Plaintiff moved to dismiss his chapter 13 case.  Debtor's Mot. Dismiss, ECF No. 76.  The Court granted the relief requested but retained jurisdiction over this adversary proceeding (the "Adversary Proceeding").  Order Dismiss. Chap. 13 Case, ECF No. 77.

The Adversary Proceeding

On September 11, 2023, Plaintiff filed a complaint commencing this Adversary Proceeding.  Compl., Adv. ECF No. 1.  Plaintiff asserted two claims for relief against all defendants for money damages for alleged violations of the RICO Statute.  18 U.S.C. § 1962(b).

Plaintiff's third claim for relief alleges that Emigrant's mortgage and note are unconscionable and seeks an order permitting Plaintiff to set off damages awarded to him against any amounts to be distributed on account of Emigrant's proof of claim.

On October 18, 2023, Emigrant answered the Complaint, denied most of Plaintiff's allegations, and asserted sixteen affirmative defenses, including that Plaintiff's claims are barred by the *Rooker–Feldman* doctrine.  Def.'s Answer, Adv. ECF No. 4.

The Court held the initial pre-trial conference on December 21, 2023.  The Court fixed June 28, 2024 as the deadline to complete discovery.  PreTrial Sched. Order, Adv. ECF No. 6.  On

4

June 11, 2024, Plaintiff moved to extend the discovery deadline.  Pl.'s Mot. Extend Time, Adv. ECF No. 11.

On July 31, 2024, Plaintiff's counsel advised that he had been suspended from the practice of law and could not represent Plaintiff.  Pl.'s Letter, Adv. ECF No. 13.

On September 12, 2024, Emigrant filed a motion to dismiss the Adversary Proceeding, or in the alternative, for judgment on the pleadings.  Def.'s Mot. Dismiss, Adv. ECF No. 14.  The hearing on the motion was scheduled for October 8, 2024.  *Id.*

The Court adjourned the pre-trial conference and the hearing on Emigrant's motion to dismiss to October 29, 2024, because Plaintiff had not responded to Emigrant's motion or appeared at the hearing, and incoming counsel had not yet filed a notice of appearance.  Neither Plaintiff nor counsel appeared at the October 29, 2024 hearing.  Additionally, no objection to the motion or notice of appearance by incoming counsel had been filed.  On October 30, 2024, the Court entered an Order directing Plaintiff to appear and show cause why the Adversary Proceeding should not be dismissed for Plaintiff's failure to prosecute.  Order Show Cause, Adv. ECF No. 18.

On December 12, 2024, Plaintiff's incoming counsel filed a notice of appearance.  Notice of Appearance, Adv. ECF No. 20.  On February 5, 2025, Plaintiff filed opposition to Emigrant's motion to dismiss.  Adv. ECF No. 21.  Emigrant filed its response the next day.  Adv. ECF No. 22.

As set forth more fully below, Plaintiff's complaint alleges that this judge and this Court constitute the RICO "enterprise."  Notwithstanding, Plaintiff's counsel stated on the record of the February 6, 2025 pretrial conference, that Plaintiff would not seek recusal.

### IV.    PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that in 2006, Plaintiff refinanced his mortgage on the Premises.  Compl., Adv. ECF No. 1 ¶ 13(v).  The new mortgage was an adjustable-rate mortgage with an interest rate of 7.375%, fixed for two years.  *Id.*  Starting in 2007, Emigrant's constituents pressured Plaintiff

5

to refinance the mortgage before the fixed interest rate expired.  *Id.* ¶ 13(vi)–(xxviii).  Also, in 2007, Plaintiff was in a car accident, sustained serious injuries, and was unable to work.  *Id.* ¶ 13(xii).

Plaintiff agreed to refinance his mortgage, believing the interest rate and monthly mortgage payment would be reduced.  *Id.* ¶ 13(xxii).  Only after the closing on the refinancing did Plaintiff realize that the interest rate and monthly payment were higher than what was represented to him and that he received no benefit from the refinancing.  *Id.* ¶ 13(xxvi).  Two days after the closing, Plaintiff attempted to rescind the loan.  *Id.* ¶ 13(xxviii).  Emigrant did not rescind the loan and billed Plaintiff at the higher rates established by the refinanced mortgage.  *Id*.

Emigrant claimed that Plaintiff defaulted on the refinanced mortgage and commenced a foreclosure action that was resolved with a settlement agreement, dated June 5, 2013.  *Id.* ¶¶ 14–18.  Plaintiff claims he complied with the settlement agreement.  *Id.* ¶¶ 21, 26.  Nonetheless, Emigrant served default notices on Plaintiff asserting Plaintiff had been in default since 2008.  *Id.* ¶¶ 27, 29.  In 2015, Emigrant commenced a second foreclosure action (the "Second Foreclosure Action").  *Id.* ¶ 30.  Plaintiff claims he was not served with the summons and complaint.  *Id.* ¶ 31.  When he learned of the action, he hired an attorney and paid him a $25,000 deposit.  *Id.* ¶ 32.  The attorney did not adequately represent the Plaintiff as the attorney was defending himself in a criminal case.  *Id*.  The attorney was convicted and disbarred.  *Id*.  Emigrant obtained a judgment of foreclosure and sale in the Second Foreclosure Action.  *Id.* ¶ 42(viii).

In Count I of the Complaint, Plaintiff alleges that Emigrant mailed notices to Plaintiff falsely claiming that Plaintiff was in default under the refinanced mortgage.  *Id.* ¶ 42(i)–(vi).  Plaintiff alleges that defendant Leggio, the process server in the Second Foreclosure Action, filed an affidavit falsely claiming he served Plaintiff with the summons and complaint.  *Id.* ¶ 41(vii).

Plaintiff alleges that Emigrant commenced the Second Foreclosure Action and prosecuted the action notwithstanding the Plaintiff was not in default. *Id.* ¶¶ 41(viii), 43, 52. Plaintiff claims that Defendants engaged in a pattern of racketeering activities by managing or controlling an enterprise. *Id.* ¶¶ 43–61. Plaintiff claims the enterprise was the State Court, which was the venue for the Second Foreclosure Action. *Id.* ¶ 39.

In Count II of the Complaint, Plaintiff alleges that Emigrant filed its proof of claim in Plaintiff's bankruptcy case knowing Plaintiff had not defaulted on its mortgage and that the judgment of foreclosure and sale was obtained under false pretenses. *Id.* ¶ 79. Plaintiff alleges that Emigrant knew and intended for the Plaintiff, the bankruptcy judge, and the Department of Justice to rely on Emigrant's misrepresentation and omissions. *Id.* ¶ 83. Plaintiff alleges that the United States Bankruptcy Court for the Eastern District of New York is the enterprise through which Defendants conducted their racketeering activity. *Id.* ¶ 74.

In Count III of the Complaint, Plaintiff requests an order disallowing Emigrant's claim in full. *Id.* ¶ 88. Additionally, Plaintiff requests the Court deem the claims for relief in this Adversary Proceeding to be counterclaims against Emigrant's proofs of claim and permit Plaintiff to recoup or set off his damages against the amounts asserted in Emigrant's proof of claim. *Id.* ¶¶ 88–89.

## V.    EMIGRANT'S MOTION TO DISMISS

Emigrant argues that Plaintiff's claims are barred by the *Rooker–Feldman* doctrine and that Emigrant is entitled to judgment on the pleadings because Plaintiff's claims under the RICO Statute fail to state a claim upon which relief can be granted. Def.'s Mot. Dismiss, Adv. ECF No. 14 § IV. Plaintiff opposed Emigrant's motion to dismiss and argues his claims are not barred by the *Rooker–Feldman* doctrine because, among other things, Plaintiff is seeking money damages and is not seeking to vacate the State Court's judgment of foreclosure and sale. Pl.'s Opp'n, Adv.

ECF No. 21 ¶¶ 3, 5.  In response to Emigrant's assertion that the Complaint fails to state a claim, Plaintiff states that the Complaint is sufficient.  *Id.* ¶¶ 2, 8.  Emigrant replied, again asserting that Plaintiff's claims are barred by the *Rooker–Feldman* doctrine because Plaintiff's claims are "inextricably intertwined" with the prior State Court determination, and that the Complaint fails to state a claim upon which relief can be granted.  Def.'s Reply, Adv. ECF No. 23.

## VI.    DISCUSSION

The Plaintiff's Claims Are Not Barred by the *Rooker-Feldman* Doctrine

The *Rooker–Feldman* doctrine was established by two Supreme Court cases, *Rooker v. Fidelity Trust Co.* and *District of Columbia Court of Appeals v. Feldman*. 263 U.S. 413 (1923); 460 U.S. 462 (1983).  The doctrine is predicated on 28 U.S.C. § 1257(a), which provides that the Supreme Court of the United States is the only federal court that may hear appeals from state court determinations.  28 U.S.C. § 1257(a) ("Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court . . . .").  Under the *Rooker–Feldman* doctrine, "federal courts lack jurisdiction over a case if the exercise of jurisdiction would result in reversal or modification of a state court judgment."  *Botsas v. U.S.*, 5 F. App'x 69, 70 (2d Cir. 2001) (citing *Hachamovitch v. DeBuono*, 159 F.3d 687, 693 (2d Cir. 1998)).  Like collateral estoppel and res judicata, the *Rooker-Felman* doctrine bars relitigating claims in federal court.  See *Rey v. Laureda and Walker (In re Rey)*, 324 B.R. 449, 453 (Bankr. E.D.N.Y. 2005).

Dismissal of federal claims for lack of subject matter jurisdiction under the *Rooker–Feldman* doctrine is proper where claims in a federal action are "inextricably intertwined" with a state court's ruling.  See *Botsas*, 5 F. App'x at 70.  A claim in a federal action is said to be "inextricably intertwined" with the merits of a state court judgment "[i]f adjudication of a claim in

8

federal court would require the court to determine that a state court judgment was erroneously entered or was void . . . ." *Powell v. Bank of New York Mellon (In re Powell)*, No. 8-23-72405-LAS, Adv. Pro. No. 8-23-08048-LAS, 2024 WL 2746690, at *6 (Bankr. E.D.N.Y. May 28, 2024) (quoting *Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 166 (E.D.N.Y. 2010), *aff'd*, 446 F. App'x 360 (2d Cir. 2011)).

Second Circuit courts have routinely held that the *Rooker–Feldman* doctrine applies in an action brought by a debtor challenging a prior state court foreclosure judgment in the bankruptcy court. See, e.g., *Barretta v. Wells Fargo Bank, N.A.*, 693 F. App'x 26, 28 (2d Cir. 2017); *Zubair v. Fay Servicing, LLC (In re Zubair)*, 20 CV 8829 (VB), 21 CV 4222 (VB), 2021 U.S. Dist. LEXIS 207717, at *15 n.8, 2021 WL 4974811 (S.D.N.Y. Oct. 26, 2021); *Porzio v. JPMorgan Chase Bank (In re Porzio)*, 622 B.R. 134, 139 (D. Conn. 2020); *In re Sanders*, 408 B.R. 25, 34 (Bankr. E.D.N.Y. 2009). Additionally, "courts in this Circuit have consistently held that any attack on a judgment of foreclosure is clearly barred by the *Rooker–Feldman* doctrine." *Talley v. LoanCare Servicing, Div. of FNF*, No. 15-CV-5017 (JMA) (AKT), 2018 WL 4185705, at *4 (E.D.N.Y. Aug. 31, 2018) (quoting *Ashby v. Polinsky*, No. 06-CV-6778, 2007 WL 608268, at *1 (E.D.N.Y. Feb. 22, 2007) *aff'd*, 328 F. App'x 20 (2d Cir. 2009)).

The *Rooker–Feldman* doctrine, however, is "not a blanket bar to a federal court's exercise of jurisdiction over claims stemming from the same facts as claims previously determined by state court." *In re Modikhan*, No. 1-19-46591-JMM, 2021 WL 5312396, at *14 (Bankr. E.D.N.Y. Nov. 15, 2021). "Lower federal courts do not lose jurisdiction merely because 'a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party.'" *Id.* (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005)); see also *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77,

87 (2d Cir. 2005) ("A plaintiff who seeks in federal court a result opposed to the one he achieved in state court does not, for that reason alone, run afoul of *Rooker–Feldman*.").

The *Rooker–Feldman* doctrine only applies where four factors are present: (1) the plaintiff in the federal court action previously lost in a state court action; (2) the plaintiff complains of injuries arising from the state court judgment; (3) the plaintiff requests that the federal court review and reject the state court judgment; and (4) the state court rendered a judgment before the plaintiff commenced the federal court action. See *Powell v. Ocwen Loan Servicing, LLC*, 840 F. App'x 610, 611–12 (2d Cir. 2020) (citing *Hoblock*, 422 F.3d at 85).

Here, the first element is met because the Plaintiff lost in the Second Foreclosure Action and a judgment of foreclosure and sale was entered by the State Court.  The second element is met because the Plaintiff is complaining of injuries arising from the State Court judgment.  In that regard, in Counts I and II, Plaintiff complains that due to the erroneous entry of the judgment of foreclosure and sale in the Second Foreclosure Action, Plaintiff lost the equity in the Premises and suffered other damages, such as attorneys' fees.  The fourth element is met because the judgment of foreclosure and sale was entered before the commencement of Plaintiff's bankruptcy case.

Plaintiff argues he does not seek to vacate the State Court judgment; therefore, the third *Rooker–Feldman* doctrine element is not satisfied.  Pl.'s Opp'n, Adv. ECF No. 21 ¶ 3.  Plaintiff cannot succeed on his RICO claims absent a finding that the State Court's judgment was entered erroneously because the Plaintiff was not in default under mortgage.  However, the State Court's judgment of foreclosure and sale does not address Plaintiff's RICO claims.  Additionally, this Court could find in favor of Plaintiff and award Plaintiff money damages, without voiding the State Court's judgment of foreclosure and sale.  Accordingly, the Court holds that Counts I and II are not barred by the *Rooker–Feldman* doctrine, albeit the Court believes it could not construe the

*Rooker–Feldman* doctrine more narrowly.  See *Hoblock*, 422 F.3d at 87 (courts should not dismiss claims that deny a legal conclusion previously reached by a state court).

<u>Counts I and II Must Be Dismissed for Failure to State a Claim Upon Which Relief May be Granted.</u>

Pursuant to Rule 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that for granting a Rule 12(b)(6) motion for failure to state a claim."  *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 301 (2d Cir. 2021); see also *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020).  As with a motion to dismiss under Rule 12(b)(6), a motion for judgment on the pleadings pursuant to Rule 12(c) "must be decided solely on the pleadings before the court, in addition to any materials implicitly or explicitly incorporated by reference into those pleadings."  *Santora v. Capio Partners, LLC*, 409 F. Supp. 3d 106, 108 (E.D.N.Y. 2017).

In determining a Rule 12(b)(6) or 12(c) motion, "[t]he court's objective is not to determine whether the plaintiff will succeed in her claim, but instead whether the plaintiff is entitled to support her claim by offering evidence."  *Vivaro Corp. v. Raza Commc'ns, Inc. (In re Vivaro Corp.)*, No. 12-13810 (MG), Adv. Pro. No. 12-01928 (MG), 2014 WL 486288, at *3 (Bankr. S.D.N.Y. Feb. 6, 2014) (citing *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 65 (2d Cir. 2010)).  Thus, the Court's role is "to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side . . . ."  *Lynch*, 952 F.3d at 75.  In evaluating the pleadings, the Court "will accept all factual allegations in the complaint as true and draw all reasonable inferences in [the plaintiff's] favor."  *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010) (citing *Johnson v. Rowley*, 569 F.3d 40, 43–44 (2d Cir. 2009)).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal

conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The complaint must plead facts which allow for a reasonable inference that the defendant is liable for the alleged conduct. *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted).

Counts I and II of the Complaint allege that Emigrant violated the RICO Statute under 18 U.S.C. §§ 1962(b) and (c). Compl., Adv. ECF No. 1 ¶¶ 34–83; 18 U.S.C. §§ 1962(b)–(c). Those sections state in relevant part:

> (b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.
>
> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C.A. § 1962(b)–(c).

A court may be an enterprise within the meaning of the RICO Statute. *United States v. Angelilli*, 660 F.2d 23, 33 (2d Cir. 1981). Further,

> [i]n those cases in which courts have been recognized as RICO enterprises, however, the participants engaged in patterns of activities designed to corrupt the operation of the courts' own processes. Whereas litigants before courts call upon the courts to exercise the judicial process, they do not participate in it in the sense intended by Congress in 18 U.S.C. § 1962(c) (1982). Such litigants do not share with the court's personnel a common purpose with respect to the activity complained of.

*Averbach v. Rival Mfg. Co.*, 809 F.2d 1016, 1018 (3d Cir. 1987).

In *Reves v. Ernst & Young*, the Supreme Court held that to conduct or participate in the conduct of an enterprise's affairs, one must participate in the operation or management of the enterprise itself.  See 507 U.S. 170, 179 (1993) (applying the "operation or management" test to 18 U.S.C. § 1962(c)).  "An enterprise is 'operated' not just by upper management but also by lower rung participants in the enterprise who are under the direction of upper management.  An enterprise also might be 'operated' or 'managed' by others 'associated with' the enterprise who exert control over it as, for example, by bribery."  *Id.* at 184.  A plaintiff must show that the defendant "conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs."  *Id.* at 185.

Under § 1962(b) of the RICO Statute, "a plaintiff must indeed allege distinct damages arising from the *acquisition of maintenance of control* of the enterprise. In other words, those damages must be different from the damages that flow from the predicate acts themselves." *D'Addario v. D'Addario*, 901 F.3d 80, 98 (2d Cir. 2018) (emphasis added). Thus, a plaintiff must allege an injury arising from a defendant's acquisition of an interest in an enterprise, which is separate and distinct from an injury resulting from the pattern of racketeering activity or commission of predicate acts. See *DeFazio v. Wallis*, 500 F. Supp. 2d 197, 208–09 (E.D.N.Y. 2007) (citing *Redtail Leasing, Inc. v. Bellezza*, No. 95 Civ. 5191, 1997 WL 603496, at *3 (S.D.N.Y. Sept. 30, 1997)).

Plaintiff alleges the State Court and this Court are the enterprises through which Emigrant conducted its illegal activities.  Compl. Adv. ECF No. 1 ¶¶ 39, 70**.**  The Complaint alleges the Defendants conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.  Compl. Adv. ECF No. 1 ¶¶ 48, 49, 73, 74.  Those allegations are conclusory and not factual.

Plaintiff alleges that Emigrant participated in the State Court "by commencement of action with its registry, filing paperwork, and then enforcing the judgment," and participated in this Court by its "collection of unlawful debt."  Compl. Adv. ECF No. 1 ¶¶ 47, 73.  Those allegations, although factual allegations, are insufficient to allege that Emigrant and the other Defendants were involved in the operation or management of either court's affairs, or acquired an interest in either court that resulted in a separate injury to the Plaintiff.  Rather, those allegations only speak to the Defendants acting as litigants and do not allege the Defendants were involved in the two courts' operations or processes.  See, e.g., *United States v. Altman*, 820 F. Supp. 794 (S.D.N.Y. 1993) (holding the government had not stated cause of action for RICO violation, as it had not established that defendant was in a leadership position within the surrogate's court, which was the alleged RICO "enterprise").  Therefore, Plaintiffs have failed to state a claim for violations of the RICO Statute.

Count III of the Complaint is Dismissed as Moot.

Count III of the Complaint is to disallow and recoup Emigrant's Claim of $849,166.81 in full.  The Plaintiff's bankruptcy case has been dismissed.  There will be no distribution on account of the Claim against which the Plaintiff's damages could be set off.  Therefore, Count III is dismissed as moot.

## **<u>CONCLUSION</u>**

For the reasons set forth above, Plaintiff's Claims I and II are dismissed as to all Defendants for failure to plead facts to support plausible claims for violations under the RICO Statute and Claim III is dismissed as moot.

Dated: August 26, 2025
      Brooklyn, New York



Jil Mazer-Marino
United States Bankruptcy Judge